Good morning, counsel. This is Judge Hardiman with Judge Fischer, and we're awaiting Judge Rendell. I'm here. Oh, she's here? Okay. All right, we'll proceed then. Ms. Romano, I'm sorry, I forgot to write down. How much rebuttal time did you deserve? Three minutes, please, Your Honor. Three minutes. Very good. Okay, go right ahead, Ms. Romano. This is the case of Starnes v. Butler County, No. 18-3271. Ms. Romano? Good morning, Your Honors. May it please the Court, Karen Romano on behalf of the appellant, Thomas Durr. Today I will address five principal issues. First, that this appeal is timely because it was brought within 30 days of the district court's final ruling on the assertions of qualified immunity. Second, that qualified immunity should have been granted on the 14th Amendment sexual harassment claim because the time-barred discrete act should not have been considered and the remaining alleged conduct does not meet the severe or pervasive standard. Third, that qualified immunity should have been granted on the First Amendment association claim because the denial was based on a marital interference claim that the plaintiff never asserted and the facts pled also fail to show direct and substantial interference in the plaintiff's marriage. Fourth, that qualified immunity should have been granted on the First Amendment retaliation claim because the plaintiff's speech involved a matter of solely personal concern and because no adverse action was alleged. Fifth and finally, qualified immunity should have been granted on the 14th Amendment disparate treatment claim because the facts alleged by the plaintiff failed to show a plausible link to her gender or that Judge Durr was personally involved in the alleged action. Okay, so just to sort of keep scoring here, we know that count one, Title VII count is going to proceed, correct? I don't believe that's the subject of an appeal, Your Honor. It doesn't involve my client. Right, okay, so that's going to go forward. Okay, go ahead, Ms. Romano. Ms. Romano, let me ask you on the first issue, which I think is very important. Yes, Your Honor. Did not the court conclusively determine the issue of qualified immunity with respect to three of the claims in the July 26 order? That's correct, Your Honor. The July 26 order addressed three of the four qualified immunity claims. Right, right. However, it was... Specifically denied the qualified immunity. And you sought to re-argue that at a later time, and the court noted that that was improper, that all she had done was allowed a narrow re-pleading on the gender discrimination claim. If she conclusively determined that there was no entitlement to qualified immunity in the July 26 order, what authority gave you the ability to forego your appeal at that time and wait until the later October order? Your Honor, if I may clarify, the July 26 order was only a partial disposition of qualified immunity as a whole because it only denied some but not all of the claims in that regard. The court specifically... The issue was the qualified immunity on those specific counts, on those specific claims, were... It was denied. It was reasoned. And you had to... In fact, that would seem to favor your client entitling you to the early appeal of these denials so you wouldn't have to await, you know, another six months. I don't know of any authority that says, oh, you can wait. The issues were conclusively determined as to those three claims, were they not? Your Honor, we wouldn't characterize that as the final order because it was foreseeable based on the district court granting leave to amend as to the remaining claim that the district court would be asked to readdress qualified immunity on that remaining claim after the complaint was amended. And in fact... But addressing it on the other claim would have absolutely no bearing and could not impact at all the previous denials, specific denials, on the 1983 14th Amendment, the 1983 First Amendment, and the First Amendment retaliation claim. Ms. Romano, how quickly was the third amended complaint filed in this case? It was filed within seven days after the July 26th order, Your Honor. But it replayed only four paragraphs, correct? I believe something like that, Your Honor. There were a few new allegations that were added, and then we moved to dismiss specifically reasoned qualified immunity in regard to those issues in addition to reasserting it regarding the others for purposes of preserving our appeal rate. The problem with... Had we filed an earlier appeal of the July 26th order, it would have resulted in piecemeal appeals on the qualified immunity issue because we would have then later had to appeal qualified immunity separately on the fourth claim. Right. But what case says that piecemeal appeals are allowed once you have a final ruling in the denial? I don't know of any case that says that. Your Honor, we rely on this court's decision in Harris v. Kellogg-Brown from 2010. And in that case, although it wasn't specifically a qualified immunity issue... I apologize, Your Honor. I didn't hear your last question. Go ahead. Go ahead. In that case, the court tentatively ruled on certain issues with the order clearly contemplating that the court might have to revisit those issues. And so the decision was held not to be a final ruling on the subject addressed. And the court specifically discussed that accepting jurisdiction at that point would not serve the goal of avoiding piecemeal appeals and would only lead to redundancy delay and waste of judicial resources that the final decision rule was meant to prevent. Right. Well, that's right when it tentatively ruled. But you agreed with me earlier that the court had conclusively determined the issues on these three claims in July. If I said conclusively, Your Honor, I misspoke. Okay. I'm sorry. Now, what did it leave open with respect to those issues? It left open that the fourth claim, once the complaint was amended, would involve a further assertion of qualified immunity. But it left nothing open with respect to the three claims, correct? Not as to those claims, Your Honor. But we would view that as a partial disposition of the issue of qualified immunity and whether my client was entitled to qualified immunity at the pleading stage of this case. So that qualified immunity question was not finally resolved by the July 26 order. Our argument is that had we appealed that order, it could have resulted in significant delay in the case, which at this point has been pending for almost three years, in terms of us pursuing an immediate appeal of three of the four qualified immunity issues. And then had the district court stayed the case at that point, as the district court did when this appeal was filed, by the time that this court had resolved the qualified immunity question on three of the four appeals, and it would then be remanded to the district court, and we would go through the whole process of moving to dismiss the amended complaint, reasserting qualified immunity on that claim, the delay could end up being quite significant in moving the case forward. But isn't that the whole point of qualified immunity, that you're entitled to have the case stayed while the court determines whether you can get out on these three claims, whether you have an appeal of that immediately. So you say, this is wrong, let us out now. Please, court of appeals, do something about this. I mean, that's the whole reason why qualified immunity claims, once they're determined, they're supposed to be appealed right away. And the whole case can put on hold, relieving your clients of all the further process. I agree, Your Honor, that qualified immunity is to be determined at the earliest stage of the case in order to promote the policies that underlie the doctrine. However, breaking this issue up into a piecemeal appeal of whether the defendant was entitled to a qualified immunity determination at the pleading stage, thus preventing any discovery or further litigation of the claim, would have been delayed and would have substantially, would have promoted judicial inefficiency in this case. But did you have the power to appeal those three claims? No, Your Honor, I don't believe so, because the July 26 order was not a final order on the issue of qualified immunity at the 12B6 stage. You could have appealed them as collateral orders at that point, could you not have? Our position, Your Honor, is that we could not have, because it was not a final order under Cohen, that it did not meet the collateral order doctrine requirements. All right. I'd be interested in hearing why you believe qualified immunity, your client's entitled to qualified immunity on the intimate association claim. That being the First Amendment claim, Your Honor? Yes. In that case, with regard to that claim, the plaintiff never alleged a claim for interference with her marriage. That claim was created by the district court in the July 26 order, and the plaintiff first pursued that theory in her responsive brief in this appeal. Regardless of that, the facts that are alleged in the Third Amendment complaint that refer to the plaintiff's husband and her relationship with him are purely legal conclusions, other than a single factual allegation regarding a trivial incident that occurred in 2010, in which Judge Durer allegedly ran into the two of them at a Lowe's store and said, I hope you're off the clock. Other than that, the allegations are pure legal conclusions that Judge Durer allegedly supervised and approved, quote, hostile conduct and, quote, harassment of the plaintiff and her husband. There are no facts pledged to support that or to create a plausible claim in that regard. The entire – is it your contention that the court misconstrued that and really it was a claim to not have to associate? Should we remand for the district court to reconsider its ruling because it misinterpreted the allegation? I don't believe that's necessary, Your Honor. I believe the plaintiff has abandoned those claims at this point, and I think the court's order implicitly denied those claims by finding that the only possible claim in the district court's view that could exist under the First Amendment was this marital interference claim. Well, but as you point out, that's not what she pleaded. Her argument, as I read the record, is that Durer was forcing her to continue to associate with him, which is a separate issue than the marital issue. Correct. That's what the plaintiff alleged, Your Honor. Right. And did the district court really address that or not? Because if the district court didn't, why shouldn't we do what Judge Rendell just said and remand? Your Honor, I believe, again, that the district court implicitly denied that claim by finding only a First Amendment theory of marital interference. Well, that's asking us to assume a lot, too, right? Couldn't it be – the more logical explanation be the district court misinterpreted the argument and just made an honest mistake there? It just seems like a lot to ask to say that there was an implicit denial, right? Well, Your Honor, I believe it was implicit by her finding only – that the only claim that the facts pled in the complaint supported in the district court view was the marital interference. But she didn't say it quite that way. She just went right in and said it has to do with marital interference. She doesn't reject anything else, it seems to me. Oh, well. The court did say, Your Honor, that the First Amendment protects family and intimate relationships. And in that regard, she implicitly denied that the First Amendment could provide a cause of action for this alleged compelled social association that the plaintiff had pled. All right, on the retaliation claim, why isn't this a statement involving a matter of public concern when her allegations involve conduct that are alleged against a president judge in Butler County? In that regard, Your Honor, paragraphs 110 and 111 of the Third Amendment complaint make it clear that the speech that the plaintiff contends was protected related to her denial of overtime duty and her alleged right-to-know request that related to who was receiving overtime. And she then told her supervisors that she would be challenging that issue in the EEOC. So it's clear that it's solely about a single incident where she was denied a duty associated with overtime pay and that it doesn't have any further public concern. Ms. Romano, it's your contention that if a public employee is denied overtime because she won't have a sexual relationship with a president judge, that's not a matter of public concern? No, Your Honor, that's not our argument. Our argument is that there were no facts pled at the time that the overtime was denied in 2016 that it had anything to do with the alleged sexual relationship. The Third Amendment complaint is explicit in pleading that that relationship had ended in 2009 and that there were no further alleged sexual contact between the plaintiff and my client. And a jury couldn't infer that the reason why the adverse employment action was taken was because of the lack of contact between the two? It seems like a logical inference a jury might draw. I don't believe so, Your Honor. I believe that the alleged relationship was so remote in time at that point that it can't support a plausible connection to the relationship or to the plaintiff's gender. The other issue, however, with the retaliation claim is that even if there is a finding of a matter of public concern, the alleged retaliation was a performance improvement plan which consisted of mere criticism. There is no allegation that the plan had any adverse effect on her employment in terms of a pay reduction, demotion, or any other tangible action. And under this Court's holdings in Brennan v. Norton and McKee v. Hart, criticism of an employee's performance, even where, as in McKee, it references the protected speech, does not as a matter of law violate the employee's First Amendment rights. So we would contend that regardless of the public versus private concern issue, the claim is clearly insufficient on that basis for failure to plead an adverse action. Okay. Any other questions for Judge Fischer, Judge Rendell? No. Okay. Thank you, Ms. Romano. We'll hear you on rebuttal. Thank you, Your Honor. Mr. Olds? Yes, Your Honor. Edward Olds on behalf of Crystal Starnes, the plaintiff, and the appellee. And I'm assuming you can hear me? Yes. Okay. Let me just address the jurisdictional question first because, I mean, we think that that sort of covers this entire case. As I think as Judge Rendell, as her questions point out and as counsel's concession concedes, the July 26th order was the final order with respect to the three claims, gender discrimination, First Amendment association, and retaliation. And there was a narrow, the plaintiff was given narrow leave to supplement the factual allegations concerning discreet act discrimination, which we did in seven days by filing the Third Amendment complaint. Once you filed, Mr. Olds, your Third Amendment complaint, where did that put the case? Well, I'll tell you, it put the case, let me just finish the little narrative here. Judge Doar filed his motion to dismiss the Third Amendment complaint ten days later on August 17th. This is well within the 30 days that there could have been an appeal from the July 26th order. And in that motion to dismiss, Judge Doar did not address the amendments per se. I mean, Judge Doar basically reinstated all of his challenges to the Second Amendment complaint. Let me just stop you here. Didn't your Third Amendment complaint reiterate all of the allegations in the prior complaints, did it not? That's correct. No, you had a Third Amendment complaint before the district court with all of the allegations, plus what was supplemented in that Third Amendment complaint that you were given the opportunity by the dismissal without prejudice. So you had this live complaint back in front of the district court. Now, as a matter of practicality, and I'm using the word practicality because that's the word that has been used most frequently when there's been a discussion of the collateral order doctrine. And the collateral order doctrine talks about practicality, that rather than looking at technical finality, in the practical sense, isn't it best to wait or to bring these cases at the most appropriate time for the district court? It wasn't the most appropriate time here to forego perhaps the right they had to appeal the July order and wait until the court determined or made a decision on this motion to dismiss for the Third Amendment complaint. Ron, if I can address the practical issue that a lawyer faces in that situation, what I would have done practically is file a motion with the district court saying, we're not certain about this July 26 order, there's a motion to dismiss pending, stay the effect of the July 26 order until you address this final item, this final detail. And as I pointed out, the motion to dismiss was filed 20 days after that July 26 order, and there was clearly time as a practical matter for them to do something about it if they were confused. Two things. Number one, they didn't challenge the amendment in the motion to dismiss the Third Amendment complaint. We changed four paragraphs in the Second Amendment complaint. We added some facts. I think the paragraph 62, I have it written down someplace here. But so we changed four paragraphs, and they didn't, in their motion to dismiss, and in the brief that they filed in support, they didn't address whether those facts stated a claim. They just reiterated their- Let's talk about practicalities again. What you're saying is they should have filed a motion to dismiss addressing only those four paragraphs and either asked for an extension to file the appeal in the district court or to come to the court of appeals. If they had come to the court of appeals with an immediate appeal, wouldn't that have put the district court in a position of them saying, we no longer have jurisdiction over your question of whether you have qualified immunity? And wouldn't that have been the practical outcome of those dual efforts? Well, I think that the- Let's start with the 30-day appeal time is jurisdictional. So the July 26 order to the appendix final is jurisdictional. And, I mean, an appeal has to take place in 30 days from that date. We're talking here about a collateral challenge to the question of whether or not your client, whether the defendant is entitled to qualified immunity. You know, from a practical point of view, I would have- I personally would have- Let me just step back. The judge bassoon enters an order, and that order has a certain legal consequence. As a lawyer, I know that, well, maybe one set of people are going to interpret it one way and another set of people are going to interpret another. I'm going to preserve the appeal time from that order most definitely because I don't want to lose that opportunity to file an appeal. From a practical point of view, they had plenty of time to stay. After we filed the motion, after we filed the Third Amendment complaint, they had 23 days and a 30-day appeal period to practically address maybe their confusion, if indeed it was confusion. Let me just interrupt for one second because you keep referencing the 30-day appeal period. That 30-day appeal period is triggered by a final order, correct? Correct. You're not arguing, are you, that when a district court enters an order granting a plaintiff leave to file an amended complaint that that order is a final order? Well, I think that that-sorry, you're on. I think that order was a final order with respect to gender discrimination and the two First Amendment claims. I think that if- Partially final and partially not final, that's what you're telling us? Not exactly. It either is final or isn't in my view, but show me what case says I'm wrong on that. Well, let's not-see, I think the confusion here between you and me is in the abstract, your statement is, you know, I would agree with it. In the concrete, in front of the court, the Judge Durr elected not to challenge the amendment, not to challenge the details of the Third Amendment complaint with respect to gender discrimination. So Judge Durr, in essence, he waived it. That's what I was getting at, right, because as I understand it, we have a non-final order, but consistent with what Judge Fischer said under Cohen v. Beneficial and the collateral order doctrine, that permits some direct appeals to be taken of interlocutory, i.e., non-final orders, and as I understand your position, Mr. Olds, you're saying that they could have taken such an interlocutory appeal, but they just decided not to and that we should consider that to be a waiver on those three claims. Correct. Okay. All right. And right, so the only appeal, the only order within the ambit of the-that could be reviewed, you know, based upon jurisdictional things, would be the October order, not the July 26 order. All right. Can we talk for a minute about the First Amendment Association claim? Because it's my understanding that the trial judge misconstrued what you were saying because you pleaded that Durr violated your client's association rights by imposing or seeking to impose an intimate relationship on her. That's what you pleaded, right? That's correct. But that's not really the way the trial judge construed it. The court sort of pivoted to this different issue of interfering with her marriage, and if that's true, shouldn't we vacate that issue and just ask the district court to properly address the claim that you actually did make? I would agree with that, yes. Okay. All right. Then what about- And I would also note, Your Honor, real quickly, that a compulsory intimate association with a married person, you know, actually obviously has a potential effect on a marriage as well. But in terms of the question of remanding to address that question, I would agree with both what you said and what Judge Rendell said earlier. Okay. Thank you. Do Judge Fischer and Judge Rendell have any other questions for Mr. Rolls? You know, a question I would have going to this intimate association claim would be, even if you could establish it, has the existence of this constitutional question that you're alleging here been established beyond debate? In other words, can this claim even survive on the basis that it was clearly established beyond debate? Well, I think that if it were addressed, that there are numerous cases, let's just talk about political cases where, in essence, political or social, that association cannot be forced. You know, say, for instance, unions in the public sector, political parties. With respect to the intimate association, I think that it's clearly established that intimate associations are protected by the First Amendment. And the public official attempting to force an intimate association on an employee over whom the public official has supervisory authority would be well enough established to survive qualified immunity. It's my best case. Let me just, if you give me one minute here. Can I have a minute? It isn't really your only best case, and it's not a bad case, but it's the Gaspers case out of the Sixth Circus? Yes. Okay. But, I mean, is that enough? Is one case out of the Sixth Circuit, even though it's close by, is that enough to meet the standard that the Supreme Court's articulated? Given the, I think, given the jurisprudence in terms of intimate associations, the recognition that intimate associations are protected in general, and that's a First Amendment issue, I think it would be, I mean, my argument is yes, it is sufficient, that case plus the generalized jurisprudence in the area that recognizes a right to intimate association. And the converse is not a jump to go, well, something is protected. Forcing a relationship that is not wanted is not qualitatively different. It's just, you know, different in detail, I guess. That's what I would say. Okay. Any other questions for Mr. Olds? No. All right. Thank you, Mr. Olds. Ms. Romano has three minutes for rebuttal. Thank you, Your Honor. In regard to the jurisdictional question that was presented by the plaintiff's motion to dismiss the appeal, the Eighth Circuit's decision in Peterson v. Reich, which is cited in our brief, is persuasive and involves very similar facts to what occurred here. In that case, there was a district court order entered in response to a motion for summary judgment raising qualified immunity. The plaintiff was further granted leave to amend the complaint. The court there found that because the denial of qualified immunity in that order contemplated the filing of another such motion after the amended complaint was filed, it wasn't a final order for purposes of Mitchell at that time. But in that case, the allowance of the amendment was much broader here. It was not the same. The summary judgment motion contemplates the filing of another such motion filed before trial and said it could be reviewable later, saying the district court essentially reset the litigation at the pleading stage. That's not what happened here. What happened here was a narrow, narrow ability to plead with respect to one claim. So I don't think Peterson is your best authority. Your Honor, in regards to my opponent's argument that we did not address the new allegations that were pled in the third amended complaint, that's incorrect according to the record. And Paragraph 7 of our motion to dismiss the third amended complaint specifically asserted qualified immunity regarding the equal protection claims, which included the disparate treatment claim. I'm sorry, was there a question? Well, the court said that that was improperly raised. Your renewed immunity arguments, the court said, were improperly raised. She'd already ruled on them. Your Honor, I agree that the district court did make that statement in regards to the prior arguments that we incorporated regarding the other claims, the three of the four claims. However, we did challenge that the amended allegations that related to the disparate treatment claim, we argued that they were still insufficient to meet the pleading standard. And therefore, and then we went on to say that they also did not establish a clearly established violation of the law. So we did actually address those in response to the third amended complaint. In conclusion, Your Honors, because our appeal in this case was clearly timely and because qualified immunity is clearly warranted for the reasons that were addressed today and that are set forth in our brief, we would ask that the court deny the plaintiff's motion to dismiss the appeal and reverse the district court's orders denying qualified immunity. Very good. Thank you, Ms. Romano. Thank you, Mr. Olds, for your argument. Well done, especially under trying circumstances. We'll take the matter under advisement.